IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RONALD BARTON, et al.,

            Plaintiffs,

v.    CIVIL ACTION NO.   2:13-cv-03127

CONSTELLIUM ROLLED
PRODUCTS-RAVENSWOOD, LLC, et al.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

Now before the court is Plaintiff Class Representatives' Unopposed Motion for Certification of Subclasses [Docket 37]. For the reasons set forth below, the motion is **GRANTED**.

    **I.   Background**

        **A.  Factual History**

The plaintiffs are proceeding on behalf of themselves and all other persons similarly situated against the defendants, Constellium Rolled Products-Ravensood, LLC, and the Constellium Rolled Products-Ravenswood, LLC Employees Group Benefits Plan (collectively "Constellium") on ERISA claims related to retiree medical benefits. (*See* First. Am. Compl. [Docket 36]). The plaintiffs allege that the class members "earned their right to retiree medical benefits through decades of employment . . . through collective bargaining between Constellium (or its predecessors) and the [United Steelworkers], which represented retiree Class Members before they retired." (First. Am. Compl. [Docket 36] ¶ 3). They allege that the labor agreements

1

Constellium entered into "contained provisions which established Constellium's obligation to provide retiree medical benefits throughout retirement at no cost." (*Id.*). They additionally allege that "[d]espite these contract provisions, as well as other promises to provide benefits to Class Members throughout retirement, Constellium unilaterally reduced coverage for Class Members effective January 1, 2013." (*Id.*).

### B. The Proposed Subclasses

The plaintiffs request that the court certify the following subclasses:

Subclass A
All former hourly, union-represented employees who retired from the aluminum fabrication plant in Ravenswood, West Virginia (the "Plant") prior to January 1, 2003, who were receiving or were eligible to receive retiree health benefits from Constellium as of December 31, 2012 under the Retired Employees' Group Benefit Plan ("Plan"), and who are subject to the average annual benefit caps of $13,007 for pre-65 participants and $5,764 for participants age 65 and older, as well as the spouses, surviving spouses, and dependents of those retired former employees who also claim a right to benefits under the Plan. Excluded from this class are retired former employees who elected to receive the early retirement package offered in 2002.

Subclass B
All former hourly, union-represented employees who retired from the Plant prior to September 17, 2012, who were receiving or were eligible to receive retiree health benefits from Constellium as of December 31, 2012 under the Plan, and who are subject to the Medicare Part B subsidy "cap" that limits Medicare Part B reimbursements to the 2012 level of $99.90 per participant per month, as well as the spouses, surviving spouses, and dependents of those retired former employees who also claim a right to benefits under the Plan.

(Pl. Class Reps.' Unopposed Mot. for Cert. of Subclasses [Docket 37], at 2). The plaintiffs move for certification of subclasses pursuant to Federal Rule of Civil Procedure 23 and Local Rule 7.1. (*See id.* at 1). They argue that the proposed subclasses meet the four requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). This motion is unopposed.

2

## II. Class Certification

To qualify for class certification under the Federal Rules of Civil Procedure, the plaintiffs must satisfy the requirements of Rule 23(a), as well as one of the three requirements of Rule 23(b). The Supreme Court has admonished district courts to engage in a "rigorous analysis" into whether a putative class should be certified. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The party seeking class certification bears the burden of proving that the putative class meets the requirements for numerosity, commonality, typicality, and adequacy. *Dukes*, 131 S. Ct. at 2548, 2551 (2012); *Falcon*, 457 U.S. at 161; Fed. R. Civ. P. 23(a). This is because "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.

### A. Rule 23(a) Considerations

Rule 23(a) provides that a case may proceed as a class action only if the following prerequisites are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### 1. Numerosity

"There is no magic number to meet the numerosity requirement." *Delebreau v. Bayview Loan Servicing, LLC*, No. 6:09-CV-00245, 2009 WL 4884354, at *1 (S.D. W. Va. Dec. 10, 2009) (citing *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984)). Additionally, "[j]oinder of all members of the class need only be impracticable, not impossible." *United Bhd. of Carpenters & Joiners of Am., Local 899 v. Phoenix Assocs., Inc.*, 152 F.R.D. 518, 522 (S.D. W. Va. 1994) (Haden, C.J.). "A variety of factors, including the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute may contribute to the court's decision under Rule 23(a)(1) in a given case." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A *Federal Practice & Procedure*, § 1762, at 206-07 (3d ed. 2005).

Here, the proposed subclasses consist of more than 1,700 persons. (Decl. of Pamina Ewing in Supp. of Pl. Class Reps.' Unopposed Mot. for Cert. of Subclasses ("Ewing Decl." [Docket 37-1] ¶ 4). The plaintiffs approximate that there are 750 members of Subclass A and 980 members of Subclass B. (*See id.*). In their amended answer to the complaint, the defendants also acknowledged "that there are potentially hundreds of putative class members[.]" (Am. Answer [Docket 27], at 15). I **FIND** that this number of class members, along with their potential geographic diversity, are sufficient to meet the numerosity requirement.

### 2. Commonality

Commonality requires that a common question of law or fact in a given case "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth

4

or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Dukes*, 131 S. Ct. at 2551.

> What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–132 (2009)). The plaintiffs argue that commonality is satisfied because

> the claims of all members of Subclass A and Subclass B depend on interpretation of the same documents; Plaintiffs challenge a single course of conduct or action by Defendants; the proposed Class Members all will suffer the same injury (reduction and termination of retiree health benefits); and they seek the same redress (recovery and reinstatement of benefits allegedly owed to them).

(Mem. in Supp. of Pl. Class Reps.' Unopposed Mot. for Cert. of Subclasses ("Mem. in Supp.")).

The proposed class members here present common issues of fact and law. Unlike in *Dukes*, where the proposed class members' claims were dependent upon the reasons for each particular employment decision (*see* 131 S. Ct. at 2552), here the putative class members each oppose the same decision—Constellium's decision to reduce the class members' retiree health insurance. (*See generally* First Am. Comp. [Docket 36]). Additionally, whether the class members are entitled to relief depends on the interpretation of the collective bargaining agreements applicable to all members of the subclasses. I therefore **FIND** that the commonality requirement is satisfied.

### 3. Typicality

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)). "The Rule

5

only requires that the representatives' claims be typical of the other class members' claims, not that the claims be identical. When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." *United Bhd. of Carpenters & Joiners of Am., Local 899 v. Phoenix Assocs., Inc.*, 152 F.R.D. 518, 522 (S.D. W. Va. 1994) (Haden, C.J.).

In this case, "[f]or both Subclass A and Subclass B, Class Representatives are typical elderly, blue-collar retirees who allege that their retiree benefits are being improperly reduced or terminated, in violation of labor contracts and ERISA plan provisions. They allege that Defendants have injured them and the Subclasses in the same way." (Mem. in Supp. [Docket 38], at 10; *see also* First Am. Compl. [Docket 38] ¶¶ 1-4, 41; Ewing Decl. [Docket 37-1] ¶¶ 4-6). "[T]he commonality and typicality requirements of Rule 23(a) tend to merge" because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S. Ct. at 2551, n.5. For the same reasons as the proposed subclasses satisfy the commonality requirement and for the reasons discussed above, I **FIND** that the proposed subclasses satisfy the typicality requirement.

### 4. Adequacy

Whether the named representative will fairly and adequately protect the interests of the class "requires a two-pronged inquiry: (1) the named plaintiffs must not have interests antagonistic to those of the class; and (2) the plaintiffs' attorneys must be qualified, experienced and generally able to conduct the litigation." *In re Serzone Products Liab. Litig.*, 231 F.R.D. 221, 238 (S.D. W.

Va. 2005). This is because "[i]f the absent members are to be conclusively bound by the result of an action prosecuted or defended by a party alleged to represent their interests, basic notions of fairness and justice demand that the representation they receive be adequate." Wright, Miller & Kane, *supra*, § 1765, at 317.

### a. Adequacy of the Class Representatives

"The adequate representation inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Serzone Products Liab. Litig.*, 231 F.R.D. at 238 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). "It is axiomatic that a putative representative cannot adequately protect the class if the representative's interests are antagonistic to or in conflict with the objectives of those being represented." Wright, Miller & Kane, *supra*, § 1768, at 389.

"A class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem*, 521 U.S. at 625-26 (quoting *E. Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). To demonstrate that the class representatives are adequate in this case, the plaintiffs provided the following in a declaration filed with the court:

> In their dealings with Class Counsel, Class Representatives have demonstrated that they are in fact members of the Subclasses that they seek to represent, that they have the same stake in the outcome as all other class members in their respective groups, and that they have an incentive to obtain a remedy under ERISA and Section 301 of the LMRA. Moreover, each is familiar with the conduct challenged in the First Amended Complaint and has agreed that he will vigorously represent the interests of the Subclasses. Finally, Class Representatives interacted with Class Counsel in connection with preparation of the lawsuit and discovery.

(Ewing Decl. [Docket 37-1] ¶ 6). The plaintiffs also argue that because "Class Representatives are members of the Subclasses that they seek to represent[,] they have the same stake in the outcome

7

as all other Class Members[,] and they have an incentive to safeguard the benefits they were promised." (Mem. in Supp. [Docket 38], at 11). I **FIND** that the plaintiffs have sufficiently demonstrated their adequacy as class representatives.

### b. Adequacy of Counsel

"[A]n essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968). The factors the court must consider when appointing class counsel include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

"In sum, the lawyer must be willing and able to vigorously prosecute the action." Wright, Miller & Kane, *supra*, § 1769.1, at 444. Plaintiffs' counsel states that they "have spent considerable time reviewing and analyzing documents relevant to the issues in this lawsuit," (Ewing Decl. [Docket 37-1] ¶ 12), indicating that they are willing and able to vigorously prosecute the action and have sufficient resources to represent the class. They have also presented resumes and biographies demonstrating that they are experienced in employment and ERISA class action cases. (*See* Pamina Ewing Biography [Docket 37-2]; William T. Payne Curriculum Vitae [Docket 37-3]; Stephen M. Pincus Biography [Docket 37-4]; Feinstein Doyle Payne & Kravec LLP Resume

[Docket 37-5]). The documents demonstrate plaintiffs' counsel's experience in these types of claims and knowledge of the applicable law. Plaintiffs' counsel also notes several cases where other courts have found their representation sufficient to represent a class. (*See* Mem. in Supp. [Docket 38], at 12). I **FIND** that the plaintiffs have demonstrated their adequacy to proceed as class counsel.

### B. Rule 23(b):

Rule 23(b) provides that a class action that satisfies Rule 23(a) may proceed if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).

Here, the plaintiffs argue that this action satisfies the standard for class certification under Rule 23(b)(1)(A), 23(b)(2), or 23(b)(3). "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian

owner using water as against downriver owners).″ *Amchem*, 521 U.S. at 614. "ERISA cases in which plaintiffs challenge the computation of benefits are often certified under Rule 23(b)(1)(A).″ *Pender v. Bank of Am. Corp.*, 269 F.R.D. 589 (W.D.N.C. 2010). Although Rule 23(b)(1)(A) is not applicable in ERISA cases where "some class members suffered no injury and some could be harmed by the requested relief″ (*Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 409 (D. Md. 2014)), that is not the case here. In this case, each of the class members was a party to the collective bargaining agreement. As discussed above, because the collective bargaining agreement required the defendants to treat all participants equally, "a violation of ERISA with respect to one participant will establish a violation with respect to all similarly situated participants.″ (Mem. in Supp. [Docket 38], at 13-14); *see also Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (certifying class under Rule 23(b)(1)(A) "because ERISA requires plan administrators to treat all similarly situated participants in a consistent manner″). I therefore **FIND** that this case satisfies Rule 23(b)(1)(A).

### III. Conclusion

For the reasons discussed above, Plaintiff Class Representatives' Unopposed Motion for Certification of Subclasses [Docket 37] is **GRANTED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 25, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE