IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RONALD BARTON, et al.,

           Plaintiffs,

v.                                       CIVIL ACTION NO.   2:13-cv-03127

CONSTELLIUM ROLLED
PRODUCTS-RAVENSWOOD, LLC, et al.,

           Defendants.

## MEMORANDUM OPINION & ORDER

Pending before the court are the plaintiffs' Motion for Summary Judgment [ECF No. 94] and the defendants' Motion for Summary Judgment [ECF No. 92]. Briefing on these motions is now complete. *See* Defs.' Resp. Pls.' Mot. Summ. J. [ECF No. 96]; Pls.' Resp. Defs.' Mot. Summ. J. [ECF No. 98]; Def.s' Reply Supp. Def.'s Mot. Summ. J. [ECF No. 100]; Pls.' Reply Supp. Pls.' Mot. Summ. J. [ECF No. 99] ("Pls.' Reply").

This case concerns both individual and class claims. Ronald Barton, Neil Knox, Elijah Morris, Wayne Morris, and John Tabor (collectively "Class Representatives") pursue individual claims, alleging violations of the Employee Retirement Income Security Act ("ERISA"). The Class Representatives, on behalf of two subclasses[1]

---

[1] Together, the subclasses have more than 1700 members. The first subclass has approximately 750 members and is defined as follows:

(collectively "retirees") also pursue class claims, alleging violations of the Labor Management Relations Act ("LMRA").[2] Both the individual and class claims turn on whether the retirees had a vested right to retiree health benefits.

## I.   Background

The retirees once worked at the aluminum fabrication plant in Ravenswood, West Virginia, that is currently owned and operated by Constellium. During their employment, the retirees were represented by the United Steelworkers ("Union"). The Union negotiated a series of collective bargaining agreements[3] ("CBA") with

---

All former hourly, union-represented employees who retired from the aluminum fabrication plant in Ravenswood, West Virginia (the "Plant") prior to January 1, 2003, who were receiving or were eligible to receive retiree health benefits from Constellium as of December 31, 2012[,] under the Retired Employees' Group Benefit Plan ("Plan") and who are subject to the average annual benefit caps of $13,007 for pre-65 participants and $5,764 for participants age 65 and older, as well as the spouses, surviving spouses, and dependents of those retired former employees who also claim a right to benefits under the Plan. Excluded from this class are retired former employees who elected to receive the early retirement package offered in 2002.

Am. Compl. ¶ 36 [ECF No. 36]. The second subclass has approximately 980 members and is defined as follows:

All former hourly, union-represented employees who retired from the Plant prior to September 17, 2012, who were receiving or were eligible to receive retiree health benefits from Constellium as of December 31, 2012[,] under the Plan, and who are subject to the Medicare Part B subsidy "cap" that limits Medicare Part B reimbursements to the 2012 level of $99.90 per participant per month, as well as the spouses, surviving spouses, and dependents of those retired former employees who also claim a right to benefits under the Plan.

*Id.*

[2] United Steelworkers is also a plaintiff in this action.

[3] Defs.' Initial Mot. Summ. J. Ex. 5 [ECF No. 47-5] ("1988 CBA"); Defs.' Initial Mot. Summ. J. Ex. 6 [ECF No. 47-6] ("1992 CBA"); Defs.' Initial Mot. Summ. J. Ex. 7 [ECF No. 47-7] ("1994 CBA"); Defs.' Initial Mot. Summ. J. Ex. 8 [ECF No. 47-8] ("1999 CBA"); Defs.' Initial Mot. Summ. J. Ex. 9 [ECF No. 47-9] ("2002 CBA"); Defs.' Initial Mot. Summ. J. Ex. 10 [ECF No. 47-10] ("2005 CBA"); Defs.' Initial Mot. Summ. J. Ex. 11 [ECF No. 47-11] ("2010 CBA").

Constellium's predecessors governing the terms and conditions of hourly employment. The retirees retired during the operative term of one of these CBAs and while covered by one of the summary plan descriptions ("SPD") issued in accord with each operative CBA.[4]

All of the relevant CBAs and SPDs provide retiree health benefits for the term of the operative CBA. In each CBA, Article 15 includes a durational clause—emphasized below—limiting retiree benefits to the term of the agreement:

> The group insurance benefits shall be set forth in booklets entitled Employees' Group Insurance Program and Retired Employees' Group Insurance Program, and such booklets are incorporated herein and made a part of this . . . Labor Agreement by such reference.
>
> . . . It is understood that this Agreement with respect to insurance benefits is an agreement on the basis of benefits and that the benefits shall become effective on [the effective date of the CBA], except as otherwise provided in the applicable booklet, and further that *such benefits shall remain in effect for the term of this . . . Labor Agreement*.

1992 CBA, at 4 (emphasis added); *accord* 1988 CBA, at 4 (nearly identical language); 1994 CBA, at 4 (identical language); 1999 CBA, at 4 (identical language); 2002 CBA, at 4–5 (identical language); 2005 CBA, at 3 (identical language); 2010 CBA, at 3 (identical language). Each SPD also includes a durational clause—emphasized below—imposing the same limitations on retiree benefits:

> It is understood that this agreement with respect to benefits is an agreement on the basis of benefits and that the revised benefits shall

---

[4] Defs.' Initial Mot. Summ. J. Ex. 15 [ECF No. 47-15] ("1985 SPD"); Defs.' Initial Mot. Summ. J. Ex. 16 [ECF No. 47-16] ("1990 SPD"); Defs.' Initial Mot. Summ. J. Ex. 17 [ECF No. 47-17] ("1992 SPD"); Defs.' Initial Mot. Summ. J. Ex. 18 [ECF No. 47-18] ("1995 SPD"); Defs.' Initial Mot. Summ. J. Ex. 19 [ECF No. 47-19] ("2005 SPD").

become effective on [the effective date of the relevant CBA], except as otherwise provided herein, and further that *such benefits shall remain in effect for the term of the Labor Agreement.*

1992 SPD, at 43 (emphasis added); *accord* 1985 SPD, at 70 (nearly identical language); 1990 SPD, at 58 (similar language); 1995 SPD, at 49 (identical language); 2005 SPD, at 72 (similar language). The 2005 SPD further provides that "[n]o benefit described in this booklet is vested." 2005 SPD, at 72.

In 2012, Constellium announced that it would unilaterally modify the retiree health benefits. Effective January 1, 2013, Constellium "extend[ed] the annual contribution caps to pre-2003 retirees" and "fr[oze] the amount [it] reimbursed post-age-65 retirees for their Medicare Part B premiums." Mem. Supp. Defs.' Mot. Summ. J. 5 [ECF No. 93]. Shortly after these modification took effect—on February 20, 2013—the individual plaintiffs instituted this class action, filing the Complaint [ECF No. 1].

On March 3, 2014, the individual plaintiffs filed the Amended Complaint, which is the operative pleading. The Amended Complaint alleges that Constellium's unilateral modifications of retiree health benefits contravened the applicable CBAs in of violation section 301 of the LMRA, 29 U.S.C. § 185, and section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Am. Compl. ¶¶ 46–51.

Thereafter, both parties moved for summary judgment. Pls.' Initial Mot. Summ. J. [ECF No. 42]; Defs.' Initial Mot. Summ. J. [ECF No. 47]. But the court stayed this case pending a ruling in *Dewhurst v. Century Aluminum Co.*, a related

case before United States District Judge John T. Copenhaver Jr. Ord., Aug. 12, 2014 [ECF No. 81]. The court later reaffirmed the stay and denied the initial motions for summary judgment. Ord., Feb. 27, 2015 [ECF No. 85]. Judge Copenhaver entered judgment in favor of the *Dewhurst* defendants on September 9, 2015. *Dewhurst v. Century Aluminum Co.*, No. 2:09-cv-01546, 2015 WL 5304616 (S.D. W. Va. Sept. 9, 2015). Five days later, the court lifted its stay of this case. Ord., Sept. 14, 2015 [ECF No. 86]. After the court lifted the stay, the parties filed the instant motions for summary judgment.

## II.   Standard of Review

Summary judgment will be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the court does not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court draws any permissible inferences from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate, "after adequate

time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Conclusory allegations, baseless speculations, and inferences built upon inferences will not preclude summary judgment. *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

## III.   Analysis

The plaintiffs assert two claims, and both claims turn on whether retiree benefits were vested. Mem. Supp. Pls.' Mot. Summ. J. 3 [ECF No. 95] (arguing, in relation to the LMRA cause of action, that the CBAs "show that [the parties] intended that benefits last throughout retirement"); *id.* (arguing, in relation to the ERISA cause of action, that the Employees' Group Insurance Program "and [its] governing documents grant retiree benefits that may not be reduced or terminated during retirement"). Resolution of this case requires resolution of a single issue: whether the retirees had a vested right to retiree health benefits.

Collective bargaining agreements are interpreted "according to ordinary principles of contact law, at least when those principles are not inconsistent with federal labor policy." *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015). As a result, the intent of the parties controls, and "[w]here the words of a

6

contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id.* (quoting 11 Richard A. Lord, Williston on Contracts § 30:6 (4th ed. 2012)); *see also Dist. 29, United Mine Workers of Am. v. Royal Coal Co.*, 768 F.2d 588, 590 (4th Cir. 1985) ("Whether an employer's obligation to provide benefits to its retirees continues beyond the expiration of the underlying collective bargaining agreement depends upon the intent of the parties."). As a result, extrinsic evidence cannot usurp the plain meaning of a clear and unambiguous written agreement. *M & G Polymers*, 135 S. Ct. at 938 (Ginsburg, J., concurring) ("When the intent of the parties is unambiguously expressed in the contract, that expression controls, and the court's inquiry should proceed no further. But when the contract is ambiguous, a court may consider extrinsic evidence to determine the intentions of the parties." (citations omitted)).

Recently, Judge Copenhaver applied these principles to nearly identical circumstances, and he found the benefits at issue were not vested based on the clear and unambiguous language of the collective bargaining agreement at issue. *Dewhurst*, 2015 WL 5304616, at *10–12. As a result, he granted the defendants' motion for summary judgment. In *Dewhurst*, each relevant CBA included a clear and unambiguous durational clause, which provided that "[t]he retirees' healthcare benefits remained in effect for the term of the applicable CBA." *Id.* at *10. After addressing the extrinsic evidence presented by the plaintiffs, Judge Copenhaver

concluded "the clarity of the durational clause trumps all collateral considerations offered," entitling the *Dewhurst* defendants to summary judgment. *Id.* at *12.

Here—as in *Dewhurst*—the relevant CBAs include clear and unambiguous durational clauses. *Compare, e.g.*, 1992 CBA, at 4 (providing retiree health benefits "shall remain in effect for the term of this . . . Labor Agreement"), *with Dewhurst*, 2015 WL 5304616, at *3 (providing retiree health benefits "shall remain in effect for the term of this . . . Labor Agreement" (emphasis omitted) (quoting the 1988 CBA before the court)). As Judge Copenhaver observed in relation to the durational clauses in *Dewhurst*, "[t]here is no basis in light of this language to conclude those benefits vested beyond the term of each CBA." 2015 WL 5304616, at *10. The same is true in this case because there is no difference between the durational clauses here and those at issue in *Dewhurst*. Accordingly, the defendants in this case are entitled to summary judgment.

The plaintiffs attempt to establish the parties intended for the retiree health benefits to be vested by citing, for example, letters concerning retiree health benefits,[5] a 1989 agreement between the Union and a former owner of the Ravenswood plant, statements in the SPDs that benefits would cease upon an individual's death, and the

---

[5] According to the plaintiffs, these letters—which they refer to as Cap Letters—distinguish this case from *Dewhurst* and compel a different result. The court does not agree. Regardless of their character and nature, these letters—as plaintiffs concede—do not modify the CBA and are merely offered as extrinsic evidence of the parties' intent. Pls.' Reply 5 ("Plaintiffs do not contend the Cap Letters modified the CBAs to add new vested benefits, but rather that the Cap Letters are evidence that the parties understood the benefits to be vested all along."). As was the case in *Dewhurst*, the clarity of the CBA forecloses the need to look to extrinsic evidence—like these letters—to infer the intent of the parties.

payment of benefits during a lockout. *E.g.*, Mem. Supp. Pls.' Mot. Summ. J. 17. Judge Copenhaver rejected an identical "attempt to overcome the clarity of the durational clause." *Dewhurst*, 2015 WL 5304616, at *10. The court finds no reason to depart from Judge Copenhaver's analysis.

In any event, the evidence offered by the plaintiffs is extrinsic and cannot be considered in the absence of ambiguity. And ambiguity is absent from the agreements. Put simply, the durational clauses of the CBAs are clear and unambiguous: retiree health benefits were not vested. At this, the court's inquiry ends.

## IV.  Conclusion

Judge Copenhaver's thoughtful and precedential *Dewhurst* opinion compels the outcome of this case. *Dewhurst v. Century Aluminum Co.*, No. 2:09-cv-01546, 2015 WL 5304616 (S.D. W. Va. Sept. 9, 2015). Accordingly, the court **GRANTS** the defendants' Motion for Summary Judgment [ECF No. 92], and the court **DENIES** the plaintiffs' Motion for Summary Judgment [ECF No. 94]. The court **ORDERS** this case be dismissed and stricken from the docket.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    January 4, 2016

9

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE